**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUIS EISENBERG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SHADE STORE, LLC,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND**<br><br>Case No.: 7:25-cv-5689 |

Plaintiff Louis Eisenberg ("Plaintiff"), by and through his attorneys, files this Class Action Complaint against Defendant The Shade Store, LLC ("Defendant" or "The Shade Store") on behalf of himself and on behalf of a class of similarly situated individuals, and alleges upon personal knowledge as to Plaintiff's own actions, and upon information and belief and investigation of counsel as to all other matters, the following:

## INTRODUCTION

1. Defendant is a large, nationwide retailer of customizable window treatment goods, such as blinds, drapery, and shades, and has sold thousands of such goods across the county, including in New York and California.

2. One such customization option is a motorization feature, which consumers can add to their product for an additional fee and allows them to operate the goods through motorization as opposed to manually.

3. Prior to the recent introduction of an updated model, Defendant used a motor now referred to as its "legacy motor."

4. These legacy motors have an inherent and fundamental defect.

5. This defect causes the motors to fail at high rates, disabling the motorization feature, freezing the shades or blinds in place, and necessitating a replacement motor.

6. Despite knowledge of this legacy motor defect, Defendant advertised and sold thousands of motorized shades and blinds with defective legacy motors. When consumers reported failed motors, Defendant provided equally defective legacy motors as replacement parts, perpetuating the problem rather than resolving it.

7. To date, Defendant has never notified consumers of the legacy motor defect.

8. Plaintiff brings this class action, on behalf of himself and others similarly situated, against Defendant for violation of consumer protection laws, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, and unjust enrichment.

## PARTIES

9. Plaintiff Louis Eisenberg, an individual, resides in and is a citizen of the State of California where he intends to remain.

10. Defendant The Shade Store, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Port Chester, New York.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d), also known as the Class Action Fairness Act (CAFA). The parties are diverse in citizenship, there are 100 or more Class Members, and the amount in controversy is greater than five million dollars ($5,000,000), exclusive of interests and costs.

12. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in New York, has its principal place of business in New York, and a significant portion of the acts complained of took place within New York.

13. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District, has its principal place of business in this District, and many of the acts giving rise to the claim occurred in this District.

## **FACTUAL ALLEGATIONS**

14. Defendant is a nationwide company that advertises, sells, and installs a variety of customizable window treatment goods, such as shades, drapery, and blinds, through approximately 151 store locations across twenty-five states and a shopping website accessible nationwide. Defendant has approximately twenty-one store locations in New York and thirty-nine store locations in California.

15. Consumers can select a foundational product, and then tailor and customize it to their specific preferences for additional costs.

16. Among other options, consumers can add a motorization feature for an increased price, which is advertised as allowing consumers to raise and lower the shades or blinds remotely rather than manually.

17. Motorized blinds and shades cannot be operated manually.

18. Defendant specifically promotes and highlights the motorization feature of its products, proclaiming the motorization to be "state of the art," advocating its ease of use and automation options, and describing the motors as "powerful and quiet."[1]

---

[1] https://www.theshadestore.com/collections/motorized-window-treatments

19. Prior to the recent introduction of a new motor, Defendant used legacy motors in its motorized goods.

20. These legacy motors fail at an alarmingly high rate, pointing to a widespread defect in the product.

21. The legacy motor defect is a serious problem. As a result of the defect, the motor completely fails, which disables the motorization feature and necessitates installation of a replacement motor.

22. In the interim, the shades and blinds are stuck in position, and they are not manually operable.

23. Given the frequent rate of failure, consumers are consistently left with an inoperable motorization feature and immovable window treatments, frustrating the fundamental purpose of the motorization customization and of the goods themselves.

**Defendant's Continuing Use of Defective Legacy Motors as Replacement Parts**

24. As part of each product purchase, Defendant purports to offer a five-year warranty in connection with motorization components. If a motor fails, the consumer can request a replacement motor from the Defendant.

25. Despite the availability of the new motor, Defendant largely replaces failed legacy motors with other legacy motors, which are equally defective and fail at the same rate.

26. This practice not only eliminates the value of the purported warranty on motorization components but perpetuates rather than resolves the problem with the legacy motors.

27. Further, it can often take several weeks to have replacement motors installed, during which time the shades or blinds are immobile, and the motorization feature inoperative.

28. Defendant also represents to consumers that it cannot replace legacy motors with its updated model and that consumers must purchase new products at further cost to receive products with the new motor.

29. Yet in certain instances, Defendant has offered and successfully replaced legacy motors with the updated model, suggesting it is not a legitimate constraint and instead an attempt to evade proper corrective action, offload defective inventory, or otherwise advance its own interests at the expense of consumers.

30. Defendant's practice of using defective legacy motors as replacements results in a continuous loop of product failure, critically limits the performance of the motorization feature, deprives consumers of the full benefits of their purchase and warranty, and causes consumers to pay higher than expected costs to maintain the functionality of the product post-warranty.

**Defendant's Knowledge of the Defect**

31. Defendant is a sophisticated retailer with an established customer service department that routinely handles consumer complaints and requests.

32. The recurring complaints regarding legacy motor failures should have alerted Defendant to a systemic issue, had it not already been known.

33. On its website, Defendant acknowledges that if consumers exhaust all other options that could cause motorized shades to stop working, "then there's likely something wrong with the motor itself."[2]

34. Further, by setting a five-year warranty on motorization parts, Defendant signals its expectation that the motor should consistently deliver reliable performance for at least that

[2] https://www.theshadestore.com/blog/roller-shade-parts/?srsltid=AfmBOoq3KU22hDveOPvp6CMehvPJ4ZprjCC6GwK_1utczAWWg5MIAbLN

duration. The consistent failure of Defendant's legacy motors, including original and replacement motors, within that period strongly indicates an inherent defect.

35. Moreover, Defendant's discreet introduction of an updated motor model and the simultaneous phase-out of legacy motors for new sales further underscores its awareness of and attempt to address the longstanding defect in legacy motors.

36. Despite this knowledge of the legacy motor defect, Defendant continued to sell blinds and shades installed with legacy motors and to provide legacy motors as replacement parts.

37. In light of the above, Defendant knew, or should have known, of the legacy motor defect.

**The Legacy Motor Defect is a Material Fact that Defendant Failed to Disclose**

38. Consumers affirmatively choose to purchase a motorized product as opposed to a non-motorized product and pay a premium price for the motorization function.

39. Motorized goods cannot be operated manually.

40. Motorization is thus a significant feature of the product, and Defendant's misrepresentations and omissions regarding the performance and reliability of the motorization feature, or lack thereof, are material to the consumer's purchase of the product. Consumers interested in motorization would consider it essential information that the motor is likely to prematurely fail and/or have an abnormally short lifespan.

41. Plaintiff and Class Members were unaware of the legacy motor defect at the time of purchase and relied on Defendant's representations as to the functionality and reliability of the motorized goods. Had Plaintiff and the Class Members known of the legacy motor defect, they would not have purchased the motorized products.

42. Defendant failed to inform Plaintiff and the Class Members of the legacy motor defect prior to their purchases of a motorized product and/or prior to replacing failed legacy motors with equally defective legacy motors.

43. Defendant's website, advertisements, and product descriptions do not have any language that would put a consumer on notice of a defect in the legacy motor.

44. Plaintiff and Class Members have been injured by Defendant's conduct and omissions because they purchased a motorized product of a quality different than promised, received equally defective replacement parts under the product's warranty, and in cases of replacements made post-warranty, were charged for defective replacement parts that were inadequate to resolve the issue.

**Plaintiff's Purchases and Product Failures**

45. In early 2020, Plaintiff purchased approximately twenty motorized flat roman shades from Defendant in California through Plaintiff's interior designer. Over the following year or so, Plaintiff purchased an additional eleven motorized flat roman shades from Defendant, for a total of thirty-one shades. For all shades, Plaintiff spent an estimated $31,000.

46. All the motorized shades used legacy motors.

47. In the years following his purchases, Plaintiff began to experience multiple motor failures, with approximately eight of the motors failing within the first 3 years.

48. Each time Plaintiff experienced a failure, he contacted Defendant's customer service for replacement motors, which Defendant provided.

49. However, beginning in early 2024, Plaintiff once again began to experience motor failures, suffering a motor failure every couple months, for a total of eight additional motor failures

in the ensuing 12+ months. Several of these motors were provided to Plaintiff as replacements for motors that had already failed.

50. To date, Plaintiff has experienced at least sixteen motor failures.

51. After each new failure, Plaintiff again contacted Defendant's customer service for replacement motors.

52. After doing research, Plaintiff learned that Defendant had an updated motor model and requested that Defendant replace the failed motors with the new model, hoping for a long-term solution to the motor issues.

53. On several occasions, Defendant represented to Plaintiff that it is not possible to replace legacy motors with the new motor and that Plaintiff would need to purchase new motorized shades at additional cost to obtain the new motor.

54. However, contrary to these representations, at least one of Plaintiff's shades was successfully installed with the new motor, and in February 2025, Defendant offered to replace three legacy motors with the new motor, demonstrating that it is, in fact, possible to replace legacy motors with the new motor.

55. Despite the existence of the new motor, Plaintiff's request for such, and the apparent feasibility of such replacements, Defendant largely replaced all of Plaintiff's failed motors with other legacy motors.

56. As a result of the number of failures and a prolonged replacement process for each motor, Plaintiff has consistently had one or more inoperable shades.

57. In response to Plaintiff's inquiry as to whether this number of failures in such a short period was unusual, Defendant denied being aware of any similar issues from other

consumers. However, multiple friends of Plaintiff reported to him via social media that they also experienced repeated issues with the legacy motors.

58. The five-year warranties on at least certain of Plaintiff's motors have not yet expired.

59. Plaintiff sent a demand letter to Defendant on April 2, 2025 via certified mail, return receipt requested, pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1782, notifying Defendant of its violations of the Act and demanding that Defendant rectify the violations, to which Defendant did not respond.

## CLASS ALLEGATIONS

60. **Definition of the Class**. Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23.

61. The Nationwide Class that Plaintiff seeks to represent is preliminarily defined as: All individuals and entities in the United States who purchased (and/or received as replacements) motorized goods installed with legacy motors within the applicable limitations period.

62. Plaintiff also seeks to represent a California Subclass preliminarily defined as: All individuals and entities in California who purchased (and/or received as replacements) motorized goods installed with legacy motors within the applicable limitations period.

63. The Nationwide Class and the California Subclass are collectively referred to as the "Class" or "Class Members."

64. Excluded from the Class are Defendant, its officers, directors, employees, affiliates, legal representatives, successors, and assigns, as well as any judicial officer presiding over this matter and their immediate family members.

65. Plaintiff reserves the right to amend or modify the Class definition with greater specificity and/or propose subclasses after having had an opportunity to conduct discovery.

66. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

a. The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

b. There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c. Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d. The claims of the representative party are typical of the claims of the Class;

e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g. There are no unusual difficulties foreseeable in the management of this class action; and

h. Plaintiff, whose claims are typical of those of the Class, through its experienced counsel, will zealously and adequately represent the Class.

67. **Numerosity**. The Class Members are so numerous that joinder of all members is impracticable. On information and belief, thousands of individuals and entities have purchased goods installed with legacy motors and have been affected by Defendant’s conduct. The precise number of Class Members is presently unknown, as such information is in the exclusive control of Defendant.

68. **Commonality**. Numerous common questions of law and fact are common to Plaintiff and the Class Members and predominate over any questions affecting individual Class Members. Such common legal and factual questions include, but are not limited to:

a. Whether the legacy motors contain a common defect;

b. The nature and cause of the defect;

c. Whether Defendant had a duty to disclose the legacy motor defect;

d. Whether Defendant knew, or in the exercise of reasonable care, should have known, of the legacy motor defect;

e. Whether Defendant made false and/or misleading statements of fact about its motorized products;

f. Whether Defendant omitted, concealed, or attempted to conceal from Plaintiff, the Class, and the public that its motorized products were defective;

g. Whether and in what circumstances a non-legacy motor can replace a legacy motor;

h. Whether Defendant's conduct violates New York and California consumer protection laws; and

i. Whether Plaintiff and the Class Members are entitled to damages, restitution, disgorgement, equitable relief, and/or other damages or appropriate relief, and if so, the amount and nature of such relief.

69. **Typicality**. By purchasing defective motorized products from Defendant, Plaintiff has the same interests in this matter as all other members of the Class. Plaintiff has no interests antagonistic to those of the Class and is subject to no unique defenses.

70. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, use the same complex evidence (e.g., expert testimony), rely upon the same legal theories, and seek the same type of relief.

71. The claims of the Plaintiff and other Class Members have a common cause, and their damages are of the same type. All Class Members have suffered damages as a result of Defendant's practices described herein.

72. **Adequacy of Representation**. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class, and he does not have interests adverse to the Class.

73. Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

74. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy for the following reasons:

a. Prosecution as a class action will eliminate the risk of repetitious litigation and/or promote uniformity in adjudications, decisions, and/or standards;

b. It is economically impracticable for members of the Class to prosecute individual actions;

c. Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not party to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d. Plaintiff seeks relief relating to the Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

e. A class action will be efficient and promote economy of time, effort, and expense; and

f. The proposed class action is manageable.

## COUNT I
## Breach of Implied Warranty of Merchantability
## NY CLS UCC § 2-314
## On Behalf of the Nationwide Class

75. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76. Under NY CLS UCC § 2-314, a warranty that goods are merchantable is implied in a contract for sale if the seller is a merchant with respect to goods of that kind. Good are merchantable if they at least: (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

77. Plaintiff and Class Members entered into a contract for sale with Defendant for motorized goods, paying Defendant a higher price for the motorization feature.

78. A warranty of merchantability is implied in Defendant's sales to Plaintiff and Class Members because Defendant is a merchant of window treatment goods and specifically advertises and sells motorized window treatment goods.

79. Defendant breached the implied warranty of merchantability by selling motorized goods to Plaintiff and Class Members with a defective motor that causes complete motor failure, which disables the motorization feature and renders the goods unusable.

80. Due to the legacy defect, the motorized products, at the very least, (a) do not pass without objection under the contract for sale description; (b) are not of fair average quality within the description; and (c) are not fit for the ordinary purpose.

81. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered damages at an amount to be determined at trial, including, but not limited to, overpayment for a motorized product, loss of use, and replacement costs.

**COUNT II**
**Breach of Implied Warranty of Fitness for Particular Purpose**
**NY CLS UCC § 2-315**
**On Behalf of the Nationwide Class**

82. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

83. Under NY CLS UCC § 2-315, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

84. A warranty of fitness for a particular purpose is implied in Defendant's sales to Plaintiff and Class Members.

85. Defendant knew of Plaintiff and Class Members' desire for a motorized product that was controlled remotely as opposed to manually because the parties entered into a contract for sale specifically for motorized goods and Plaintiff and Class Members paid Defendant an increased price for the motorization feature.

86. Defendant also knew that Plaintiff and Class Members were relying on Defendant's skill or judgment to furnish suitable goods as Defendant is a retailer of window treatment goods and specifically advertises motorization as an available feature that consumers can add on for an additional cost.

87. Defendant breached the implied warranty of fitness for a particular purpose by selling motorized goods to Plaintiff and Class Members with a defective motor that causes

complete motor and product failure, rendering them unfit for their particular purpose as motorized goods.

88. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered damages at an amount to be determined at trial, including, but not limited to, overpayment for a motorized product, loss of use, and replacement costs.

**COUNT III**
**Unjust Enrichment under New York Law**
**On Behalf of the Nationwide Class**

89. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

90. Plaintiff and Class Members purchased motorized products and paid Defendant an increased price for the motorization feature.

91. Despite knowing of the legacy motor defect and without disclosing the defect to Plaintiff and the Class Members, Defendant unjustly charged, accepted, and retained the fees that Plaintiff and Class Members paid for a motorized product.

92. Plaintiff and Class Members were not aware of the legacy motor defect prior to the purchase.

93. It is inequitable and unconscionable for Defendant to retain the fees paid for the defective motorized product. Plaintiff and Class Members paid for a functional, defect-free product that they did not receive.

94. Plaintiff and Class Members would not have paid an increased cost for a motorized product or would have paid less for the product if they had known of the legacy motor defect.

95. Plaintiff and Class Members do not have an adequate remedy at law.

96. Restitution or disgorgement of the amount of Defendant's unjust enrichment is appropriate and necessary as it is against equity to permit Defendant to retain the benefits it derived from Plaintiff and Class Members through unjust and unlawful acts.

**COUNT IV**
**Violations of the California Consumers Legal Remedies Act**
**Cal. Civ. Code §1750, *et seq*.**
**On Behalf of the California Subclass**

97. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

98. California Civil Code § 1750, *et seq*., also known as California's Consumers Legal Remedies Act (CLRA), prohibits unfair and deceptive business acts and practices in transactions for goods and services. Cal. Civ. Code § 1770 sets out a list of unfair and deceptive acts and practices that violate the CLRA.

99. By its acts and practices alleged herein, Defendant has violated, and in some respects continues to violate, the CLRA in at least the following ways:

a. by advertising motorized goods without the intent to sell them as advertised;

b. by representing motorized goods as having characteristics, uses, and/or benefits that they do not have;

c. by representing that the motorized goods are of a particular standard, quality, or grade when they are below that standard, quality, and/or grade;

d. by representing that a transaction confers or involves rights, benefits, remedies, or obligations that it does not have or involved, or that are prohibited by law;

e. by representing that the subject of the transaction had been supplied in accordance with a previous representation;

100. With respect to omissions, Defendant at all relevant times had a duty to disclose the legacy motor defect in question because (a) Defendant had exclusive knowledge of the legacy motor defect that was not known to Plaintiff and the Class; (b) Defendant concealed information

about the legacy motor defect from Plaintiff and the Class; and/or (c) Defendant made partial representations about its motorized goods, which were false and misleading absent the omitted information.

101. Defendant knowingly sold defective motorized goods at higher prices without disclosing the defect to Plaintiff and the Class, and while advertising defect-free, functional, and reliable motorized goods.

102. The legacy motor defect causes early and frequent motor failure, which disables the motorization feature and requires installation of a replacement motor. Meanwhile, the window treatments remain fixed in place, and they cannot be moved manually.

103. Despite knowledge of the legacy motor defect and the availability of a new motor model, Defendant largely replaces failed legacy motors with other legacy motors, which are equally defective and perpetuate the same functional deficiencies.

104. Defendant's unfair and deceptive business acts and practices alleged herein deceived, are likely to deceive, and/or are likely to mislead consumers, including Plaintiff and Class Members.

105. The existence of the legacy motor defect is material to a reasonable consumer.

106. The reliability, quality, and performance of the motor are fundamental to the motorized products' function, and therefore important to a consumer making a purchasing decision about a motorized product.

107. Defendant knew, or should have known, about the legacy motor defect because of the high rate of failure of both original and replacement legacy motors and consumer complaints and reports.

108. Plaintiff and the Class reasonably relied on Defendant's material misrepresentations and omissions regarding its motorized goods and legacy motors to their detriment.

109. Plaintiff and the Class would not have purchased the motorized goods or would have paid less had they known about the legacy motor defect.

110. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the Class suffered damages, including, without limitation, (a) increased fees for a defective motorized product worth a lesser value that its purchase price, (b) payment for a product that was consistently unusable for its intended purpose, (c) substantial loss of use, (d) excess costs of replacement motors, and (e) denial of the full value and benefit of their purchase and warranty.

111. On April 2, 2025, Defendant sent a letter in compliance with Cal. Civ. Code § 1782, stating that due to the allegations herein, Defendant was in violation of, among other things, Cal. Civ. Code § 1770, and demanding rectification of the violations. Defendant did not respond to the letter.

112. Under Cal. Civ. Code § 1780, Plaintiff seeks an order awarding compensatory damages, restitution, disgorgement, punitive damages, injunctive relief, and all other relief available under the CLRA, plus interest, attorneys' fees, and costs.

113. Plaintiff seeks injunctive relief to enjoying Defendant's ongoing unfair and deceptive acts and practices, including, but not limited to, the practice of providing, offering, and selling defective legacy motors as replacement parts.

114. The defect in legacy motors is unresolved and ongoing, and Defendant continues to offer, use, and sell defective legacy motors. Without an injunction, Defendant's unfair and deceptive acts and practices will continue, inflicting substantial injury upon Plaintiff, the Class

Members, and the public, with no adequate legal remedy for future violations. As Defendant's unfair and deceptive acts and practices are ongoing, damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**COUNT V**
**Violations of California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**On Behalf of the California Subclass**

115. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

116. California Business & Professions Code § 17200, *et seq*., also known as California's Unfair Competition Law (UCL), prohibits any unfair, unlawful, or fraudulent business acts or practices.

117. By the acts and practices alleged herein, Defendant has committed one or more unfair, unlawful, or fraudulent business acts and practices within the meaning of the UCL.

118. **Unfair**. Defendant's acts and practices alleged herein are unfair because they (a) offend public policy, including, without limitation, such policy reflected in Cal. Civ. Code §§ 1709-1710; and/or (b) are immoral, unethical, unscrupulous, and/or substantially injurious to consumers.

119. Defendant knowingly made false or misleading representations or omissions regarding its motorized goods, and, without notifying consumers of the legacy motor defect, charged consumers increased prices for defective motorized products that fail soon after purchase.

120. Despite knowledge of the defect and the availability of a new motor model, Defendant routinely replaces failed legacy motors with equally defective ones, letting customers believe the replacements are functional and defect-free.

121. After running out the clock on a product's warranty, Defendant will then charge consumers for further replacement legacy motors with the same defect.

122. Defendant also represents to consumers that they must purchase new products at additional cost to receive the updated motor, requiring consumers to pay Defendant significant additional money to permanently get rid of the defective motors.

123. Plaintiff and Class Members spent considerable time and energy contacting customer service, repeatedly sending back failed motors, and installing replacement motors, all to receive defective replacements.

124. There is no utility to Defendant knowingly selling a defective motorized product or providing defective legacy motors to unsuspecting consumers, and even if there were utility, it would be significantly outweighed by the gravity of the harm to its consumers caused by Defendant's conduct alleged herein.

125. **Unlawful**. Defendant's acts and practices alleged herein are unlawful because they violate Cal. Civ. Code § 1750, *et seq*., as described herein.

126. **Fraudulent**. Defendant's acts and practices alleged herein are fraudulent because Defendant's misrepresentations and omissions regarding its motorized products and the legacy motors deceived, are likely to deceive, and/or are likely to mislead consumers, including Plaintiff and the Class.

127. As described herein, Defendant (a) mispresented the characteristics, quality, and performance of its motorized goods installed with legacy motors, (b) mispresented the characteristics, quality, and performance of its legacy motors, and (c) failed to disclose, omitted, and/or concealed the legacy motor defect from consumers prior to and/or after purchase of the motorized goods.

128. With respect to omissions, Defendant at all relevant times had a duty to disclose the legacy motor defect in question because (a) Defendant had exclusive knowledge of the legacy

motor defect that was not known to Plaintiff and the Class; (b) Defendant concealed information about the legacy motor defect from Plaintiff and the Class; and/or (c) Defendant made partial representations about its motorized goods, which were false and misleading absent the omitted information.

129. Defendant knowingly sold defective motorized goods at higher prices without disclosing the defect to Plaintiff and the Class, and while advertising defect-free, functional, and reliable motorized goods.

130. The legacy motor defect causes early and frequent motor failure, which disables the motorization feature and requires installation of a replacement motor. Meanwhile, the window treatments remain fixed in place, and they cannot be moved manually.

131. Despite knowledge of the legacy motor defect and the availability of a new motor model, Defendant largely replaces failed legacy motors with other legacy motors, which are equally defective and perpetuate the same functional deficiencies.

132. Defendant's unfair and deceptive business acts and practices alleged herein deceived, are likely to deceive, and/or are likely to mislead consumers, including Plaintiff and Class Members.

133. The existence of the legacy motor defect is material to a reasonable consumer.

134. The reliability, quality, and performance of the motor are fundamental to the motorized products' function, and therefore important to a consumer making a purchasing decision about a motorized product.

135. Defendant knew, or should have known, about the legacy motor defect because of the high rate of failure of both original and replacement legacy motors and consumer complaints and reports.

136. Plaintiff and the Class reasonably relied on Defendant's material misrepresentations and omissions regarding its motorized goods and legacy motors to their detriment

137. Plaintiff and the Class would not have purchased the motorized goods or would have paid less had they known about the legacy motor defect.

138. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the Class suffered damages, including, without limitation, of (a) increased fees for a defective motorized product worth a lesser value that its purchase price, (b) payment for a product that was consistently unusable for its intended purpose, (c) substantial loss of use, (d) excess costs of replacement motors, and (e) denial of the full value and benefit of their purchase and warranty.

139. Plaintiff seeks an order awarding compensatory damages, restitution, disgorgement, punitive damages, injunctive relief, and all other relief available under the UCL, plus interest, attorneys' fees, and costs under Cal. Civ. Proc. Code § 1021.5.

140. Plaintiff seeks injunctive relief to enjoying Defendant's ongoing unfair and deceptive acts and practices, including, but not limited to, the practice of providing, offering, and selling defective legacy motors as replacement parts.

141. The defect in legacy motors is unresolved and ongoing, and Defendant continues to offer, use, and sell defective legacy motors. Without an injunction, Defendant's unfair and deceptive acts and practices will continue, inflicting substantial injury upon Plaintiff, the Class Members, and the public, with no adequate legal remedy for future violations. As Defendant's unfair and deceptive acts and practices are ongoing, damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**COUNT VI**
**Breach of Implied Warranty of Merchantability**
**Cal. Comm. Code § 2314**
**On Behalf of the California Subclass**

142. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

143. Under Cal. Comm. Code § 2314, a warranty that goods are merchantable is implied in a contract for sale if the seller is a merchant with respect to goods of that kind. Good are merchantable if they at least: (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

144. Plaintiff and Class Members entered into a contract for sale with Defendant for motorized goods, paying Defendant a higher price for the motorization feature.

145. A warranty of merchantability is implied in Defendant's sales to Plaintiff and Class Members because Defendant is a merchant of window treatment goods and specifically advertises and sells motorized window treatment goods.

146. Defendant breached the implied warranty of merchantability by selling motorized goods to Plaintiff and Class Members with a defective motor that causes complete motor failure, which disables the motorization feature and renders the goods unusable as they cannot be moved manually.

147. Due to the legacy defect, the motorized products, at the very least, (a) do not pass without objection under the contract for sale description; (b) are not of fair average quality within the description; and (c) are not fit for the ordinary purpose.

148. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered damages at an amount to be determined at trial, including, but not limited to, overpayment for a motorized product, loss of use, and replacement costs.

**COUNT VII**
**Breach of Implied Warranty of Fitness for Particular Purpose**
**Cal. Comm. Code §2315**
**On Behalf of the California Subclass**

149. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

150. Under Cal. Comm. Code §2315, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

151. Defendant's sales to Plaintiff and Class Members have an implied warranty of fitness for a particular purpose.

152. Defendant knew of Plaintiff and Class Members' desire for a motorized product controlled remotely as opposed to manually because the parties entered into a contract for sale specifically for motorized goods and Plaintiff and Class Members paid Defendant an increased price for the motorization feature.

153. Defendant also knew that Plaintiff and Class Members were relying on Defendant's skill or judgment to furnish suitable goods as Defendant is a retailer of window treatment goods and specifically advertises motorization as an available feature that consumers can add on for an additional cost.

154. Defendant breached the implied warranty of fitness for a particular purpose by selling motorized goods to Plaintiff and Class Members with a defective motor that causes complete motor failure, rendering them unfit for their particular purpose as motorized goods.

155. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered economic damages at an amount to be determined at trial, including, but not limited to, overpayment for a motorized product, loss of use, and replacement costs.

**COUNT VIII**
**Unjust Enrichment under California Law**
**On Behalf of the California Subclass**

156. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

157. Plaintiff and Class Members purchased motorized products and paid Defendant an increased price for the motorization feature.

158. Despite knowing of the legacy motor defect and without disclosing the defect to Plaintiff and the Class Members, Defendant unjustly charged, accepted, and retained the fees that Plaintiff and Class Members paid for motorized product.

159. Plaintiff and Class Members were not aware of the legacy motor defect prior to the purchase.

160. It is inequitable and unconscionable for Defendant to retain the fees paid for the defective motorized product. Plaintiff and Class Members paid for a functional, defect-free product that they did not receive. Plaintiff and Class Members paid for a functional, defect-free product that they did not receive.

161. Plaintiff and Class Members would not have paid an increased cost for a motorized product or would have paid less for the product if they had known of the legacy motor defect.

162. Plaintiff and Class Members do not have an adequate remedy at law.

163. Restitution or disgorgement of the amount of Defendant's unjust enrichment is appropriate and necessary as it is against equity to permit Defendant to retain the benefits it derived from Plaintiff and Class Members through unjust and unlawful acts.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, requests the Court to:

A. Certify the case as a class action pursuant to Fed. R. Civ. P. 23, appoint Plaintiff as representative of the Class, and designate Plaintiff's counsel as Class Counsel;

B. Enter a judgement in favor of Plaintiff and Class Members as against Defendant;

C. Order Defendant to provide compensatory damages, any equitable monetary relief, including restitution, to Plaintiff and Class Members, and/or order Defendant to disgorge profits it realized as a result of its unlawful conduct, in an amount to be determined at trial;

D. Order Defendant to pay punitive and/or treble damages, as allowable by law, to Plaintiff and the Class Members;

E. Enter an order of injunctive relief, including, but not limited to, ordering Defendant to notify purchasers of the defect, ceasing to use or repairing the defective legacy motors, and ordering Defendant to take appropriate corrective action such as replacing defective legacy motors with suitable, non-defective motors, and/or refunding to Plaintiff and Class Members all funds paid for the defective motorized goods and/or replacement legacy motor;

F. Enter an award of pre- and post-judgement interest;

G. Enter an award of reasonable attorneys' fees and costs, including pre- and post-judgement interest; and

H. Award such further relief as may be just and proper.

## DEMAND FOR JURY

Plaintiff, on behalf of himself and the Class, demands a trial by jury on issues so triable.

Dated: July 10, 2025

**COULSON P.C.**

By: */s/ Nicholas A. Coulson*

NICHOLAS A. COULSON, ESQ.*
COURTNEY RYGALSKI, ESQ.*
**Pro Hac Vice Application to Be Submitted*
COULSON P.C.
300 River Place Drive
Suite 1700
Detroit, Michigan 48207
T: (313) 644-2685
Nick@CoulsonPC.com
CRygalski@CoulsonPC.com

*Attorneys for Plaintiff and the Putative Class*